Good morning and welcome to the Ninth Circuit. Judges O'Scanlan and Kleinfeld and I are all happy to be here in Seattle on a day when it's not raining. And we have several cases submitted on the briefs today. United States v. McGowan, 18-30028 is now submitted. United States v. Young, 18-30039 is now submitted. Madrigal-Berrera v. Barr, 16-73727 is now submitted. Sanchez-Miranda v. Barr, 17-73065 and 18-71743. That one, submission is deferred. And Chavez-Muir v. Barr is also deferred for 15-35396. And each side will have 10 minutes. Good morning, your honors. Can you hear me? Good morning. Yes. Good morning. My name is Vicky Lai and I'm with the Federal Public Defender's Office and I represent Joseph Njonge. I apologize for saying that wrong. I'd like to note for the court that Mr. Njonge's family, including his mother, Lucy Njonge, and his sister, Ann Njonge, as well as his friends, are in the courtroom today. The District Court's order is an unusual one. I have not found any case like it. The District Court rejected the Chief Magistrate Judge's recommendation that it grant habeas relief and ruled at ER-22 that Mr. — even after it ruled that Mr. Njonge did not waive his public trial claim, that it was — that his independent claim was appropriately brought on direct appeal and that it was before the District Court as a structural error. And just two pages before that statement, the court acknowledged that structural errors are not susceptible to harmless error prejudice. Could you help me on something that's really bothering me here? What is the force of the State Supreme Court's finding of fact that the trial judge did not, in fact, exclude all members of the public? Well, I think that was an unreasonable determination of the facts, Your Honor, because the record makes clear, as the Court of Appeals Division 1 found, that there was a closure. The court — Wait, you're talking about the Intermediate Appellate Court in the state of Washington? The Intermediate Appellate Court, and then that same record went before the Washington Supreme Court. Why does that make the Washington Supreme Court wrong? We can't defer to the Intermediate Court, but we have to defer to the Supreme Court. I understand that. I understand that. But the record before the Washington Supreme Court is clear that there was a closure through the trial court's statements and the fact that the doors were actually closed to Mr. Njonge's family and friends. Let's — what language do you think makes it unreasonable? Language that the state trial judge voiced? So where in the record is — That's right. — shows the closure? That's right. Okay, so — It looks to me like he kept saying, not all of you are going to be able to fit in. We'll see what the — Well, okay, I would like to go — — fire marshal says and all that, but he never says in so many words, no members of the public. Well, Judge Meadow, on June 2nd, which was the day before Vardir began, which is when Njonge was — and his — Mr. Njonge's family and friends were in the courtroom. The court said, I think about the only place for visitors to sit is going to be in that little ante room out there. Right. Okay. That's at ER-122. At ER-125 to 126, she says, tomorrow, when we have the jury selection, there will not be room for all of you. What we're going to do to allow people to observe is to check with the fire marshal and make sure that we can keep those first swinging doors open. If we can do that, then we will allow some people to observe — Right. — if they wish to do so. Those are the two remarks about what's likely to happen in the future. Keep going. Okay. So far, it looks to me as though they're both predictions. Predictions. And discussions of — Right. And then at ER-178, which is June 3rd, after the lunch recess, the prosecutor informs the court that the family members are still waiting outside the courtroom. And now that veneer members have been excused, can they come into the courtroom? You know, I have no difficulty going with you to the point of inferring that it's fairly probable, certainly possible, that the public was excluded. But because of the deference that we're required to give to the state court, I don't know if I can say that they made an unreasonable determination. And that's what I'm trying to find out. Well, if Your Honor has a problem with that prong, we are still arguing that 2254-D1 was met here. Are we talking unreasonable determination of law or fact here? I was talking fact. We argue both, because there are two decisions that the district court looked at, because they were on two different records. One was before the Washington Supreme Court on direct review, which had the transcript before it. The other was before the Washington Supreme Court commissioner, which had the additional evidence that showed that, in fact, the courtroom had been closed. So if you succeed in showing that the state court decision or decisions were unreasonable determinations of law or fact, you still just get us to de novo review of this claim, right? And can you speak to why this closure, if it existed, was not trivial? Well, I would first like to know... If I may supplement that question specifically with respect to our Ivester case. Are you familiar with the Ivester case? Yes, I am. All right. Thank you. In Ivester, it was much... the duration was shorter than this. And in Ivester, some jurors were concerned because there were some people in the courtroom who they said looked menacing. And I think that people in the courtroom were family members of the defendant. And so the judge, the trial judge, cleared the courtroom and for a very brief duration inquired of the jurors who said they were concerned, whether they were afraid, and then explained to the jurors that there were marshals or there were guards in the courtroom. And then the jurors said they felt fine with that. This was a three... a minimum of a three-hour closure where... And I think in this case, it absolutely is an incredible case for involving the values of the public trial right. Were the kinds of questions that were going on at the time, though, about whether jurors had scheduling conflicts and the like, something that actually could have been done on paper and not even in live court? Well, that is not the only thing that occurred in the three hours. In the three hours, Judge Middow adjudicated a substantive motion on other suspect evidence. Judge Middow and even going... Most motion proceedings don't have to be open to the public, just trials. Well, the presumption... Most motion proceedings in criminal court take place at separate events. They take place before anyone goes to trial. Well, I think the presumption is always of open courtroom. And in this case, it was particularly important because Mr. Jongae was a 24-year-old immigrant from Kenya who had never been exposed to the criminal justice system. He was charged with first-degree premeditated murder. And it was important for him to have his supporters and his family in the courtroom. And as this court said in United States v. Rivera, it makes a difference when you have your community and supporters there. I don't know that that matters much. I mean, the reason for this right is so that the defendant can be assured that it's not a court of star chamber type of proceeding and the public can be assured that it's not a court of star chamber proceeding. That's one of the... And the problem with family members is sometimes they're prospective witnesses, character or otherwise, character, alibi, all kinds of witnessing by family members where other rules apply specifically so that they can be excluded. I only have a minute left. I wanted to reserve some for rebuttal, but I respectfully disagree, Your Honor. In United States v. Rivera, it was a 35-minute closure of a sentencing hearing. And the person that was excluded was a 7-year-old son of the defendant. Judge Berzon explained that one of the values of the public trial right is to remind the court personnel, the jurors, the attorneys of the importance of their roles and to make the triers keenly aware of the importance of their roles and function. I also give you a minute for rebuttal. Thank you. May it please the court. John Sampson, Assistant Attorney General for the Appellee. The court should affirm the district court's judgment for two reasons. First, as a matter of federal law, the petitioner never invoked the right to a public trial in this case and therefore cannot show a constitutional violation as a matter of federal law. And second, the state court decision was not an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Let me ask you about whether the failure to object control suit. At best, that will get you to plain error. It doesn't seem like it would mean that there was not error. And from the Supreme Court decision, I think it was in Weaver where they said, gee, you can deal with this. Just do half the voir dire and then do the other half the voir dire so you can leave a section of the courtroom open for the public. And that's what the Supreme Court said. And it is so unusual to exclude the public that you would think a judge would have maybe checked the decisions or maybe the prosecutor would have told the judge, judge, you may be planting appealable error in this record. I'm amazed that the prosecutor didn't cure the error. Well, Your Honor, that assumes there actually was an error, which the state Supreme Court on direct appeal determined that the record on direct appeal did not prove that the courtroom was actually closed. That's why I asked all the questions about whether that was an unreasonable determination of fact. And Your Honor, it was not. Even if this court believes it was erroneous and even if this court would look at the record before the state Supreme Court on direct appeal and would make inferences to determine that the courtroom was closed, it was not unreasonable for the state Supreme Court to reach the opposite conclusion. So what is the factual support in the record for their conclusion that it was not closed? Your Honor, the trial judge's comments were that there may not be room for all of you. That the spectators were certainly reckoned or were certainly allowed to attend and observe. And this is at excerpts record 125 to 126. He said, you are certainly welcome to observe tomorrow when we have jury selection. There will not be room for all of you. But when you put it together with the thing that happens later that we were just reading about when they come back after the first round and he says now there's some room, doesn't that suggest that there wasn't any room in the morning? Not exactly, Your Honor. And what the state Supreme Court said was we will not infer since the burden's on the appellant to actually show a closure. They're not going to infer from just that silent record that there was a closure. The judge said two rows will be left open. But it's unclear why those were left open. When the prosecutor came in later and said I have some family members who are not witnesses and who would like to sit maybe in that second row. That second row did have some jurors in it. Had one juror in it. And the judge moved that juror to another row so that the family members could sit there and watch. When was that though? Was that later? That was later, Your Honor. That was in the afternoon session. One of the reasons that those family members may not have come in in the morning may have been because the judge excluded a family member who was a witness because that family member was a witness. And the family members may have thought they were not allowed in in the morning. The other reason that may have occurred is that members of the public might have been in but there weren't seats for those particular family members. What the state Supreme Court said was we are not going to infer from a silent record that error occurred without some proof. Because again, it is the appellant's burden to show the error actually occurred. And so if this case was on direct appeal to this court, this court may actually say that would be clear error. But that's not enough. Under Rice v. Collins and under Cullen v. Penholster, it has to be that no fair-minded jurist could reach that decision. And I would submit that a fair-minded jurist could make the same decision the state Supreme Court made. Now the case that we are reviewing is not that decision. It is the petition for collateral review. Is that not correct? Isn't that the most recent? That is the most recent decision. And with respect to that, the Supreme Court of the state denied review because Mr. Dijonge could not show prejudice. Well, now that's a violation of federal law, is it not? Not clearly established. The US Supreme Court has not ruled at the time of this adjudication, and even now, has not ruled what is the proper standard of review on collateral review. The two cases, Waller v. Georgia and Presley v. Georgia, were both on direct appeal. Weaver v. Massachusetts, which came out after this decision, didn't directly answer the question, although there is some language in Weaver that suggests what the state Supreme Court did here was correct. That a petitioner trying to challenge a closed jury or a closed courtroom on collateral review has to show some prejudice because they're... How could that possibly be? I mean, for one thing, in Presley, the court said prejudice is not necessary. And for another, I don't see how you could show it. Well, Your Honor, the Supreme Court has not fully developed this area. There's very limited case law. And what we have to look at is what... Two important ones, Presley and Weaver. Those are both cases on direct appeal where the defendant objected. And if you want to look at a case where the defendant did not object, that's... Presley says no objection was necessary in the free press case, as I recall, and that the judge should have sua sponte addressed the problem. Your Honor, Presley's reference to press enterprise was talking about the First Amendment right. Here, we're talking about the Sixth Amendment right, which are two separate rights. Which is stronger, as the court pointed out. But as also Justice Stevens and his concurrence pointed out in press enterprise, where there was actually an objection to the closure by the press, Justice Stevens pointed out this would be a different case if it was the defendant asserting a Sixth Amendment right and there was no objection to the closure. So there was recognition. And again, the question under AEDPA is not whether the state Supreme Court erred by not extending the existing Supreme Court precedent. The question is, is there a Supreme Court case that the state court unreasonably applied? And this is very much like Gleave versus Frost, where this court in an en banc decision found that the state court's decision not to apply structural error was unreasonable because Herring versus New York said you cannot prohibit closing argument. And the US Supreme Court reversing this case, or reversing this court in Gleave versus Frost said, well, we've never said that directly. So the state court's decision cannot be an unreasonable application of clearly established federal law. Counsel, assuming, let's just say for the argument, that we can't defer to the Washington state last reason decision, what about the merits of the Sixth Amendment itself? I would like to hear your response to counsel on this issue of the Ivester case. Yes, Your Honor. Ivester was different in facts as to the duration, because this was the morning session. But if you actually look what occurred in the morning session, this was hardships, what we call hardships in Washington, where the person would not be able to find work if they had to sit in a jury trial, or they're the sole caregiver, those type of things. And as Your Honor pointed out, there's actually a lot of times those are decided by the clerk outside of the public courtroom. There is no US Supreme Court case that says that hardships are protected, or that that part of the proceeding is protected by the open court. So I'm confused about why, at least I believe this argument wasn't in your brief. It seems that you tried to defend both of the state court decisions, but never argued what we should decide if we have to look at this de novo. It seems like you're now doing that today. But why shouldn't we treat this as waived? Your Honor, I did not assert the Ivester defense because I didn't believe that the court needs to get there. And if you're going to consider my argument waived, then I would say that under Levine v. United States, that is the controlling case. Levine v. United States expressly said, if a defendant does not object to the closure at trial, that changes the Constitution. There would be a different case. There is no constitutional error. The court did not go into plain error review in Levine. They said there is no constitutional error. And in Peretz v. United States, which dealt with the right to have an Article III judge, if the defendant does not object to the magistrate sitting in jury selection, there is no constitutional violation. It changes. That's good law anymore after Presley and Weaver. Well, Your Honor, I think that Presley and Weaver never said anything about that because they both dealt with situations where there was an express objection. Help me on one thing before you end, the requirement that we defer to the last reasoned decision. We've been talking so far as though that means last in time, which means the state Supreme Court's decision on the collateral challenge. However, I wonder if last means the highest court or the final decision in the chain of state courts, which would mean the state Supreme Court. Is there any authority that tells us which it means? It strikes me that the state Supreme Court addressed specifically the fact question of whether the public was excluded. The state Supreme Court on collateral review did not. So I want to know what does the last reasoned decision mean? Is there authority for saying it means the one on collateral review because it's last in time? Your Honor, I can't think of a case that really says that particular issue where the same claim is essentially adjudicated both on appeal and on collateral review. Isn't that what Barker was about? I thought Barker told us we need to look at the collateral review decision in this kind of situation. That may be true, Your Honor. I'm just not recalling Barker. What I would say is that my understanding is it is the very last decision, which is also the decision by the state Supreme Court. So in either analysis, you're looking at the commissioner's ruling who is in our state acts as the state Supreme Court when the commissioner issues the public or the reasoned decision. So that would be what the court would look at. A lot of the arguments about what happened on appeal are simply addressing the petitioner's arguments about what happened on appeal and how they had argued both below and in this court that the state court on appeal was unreasonable. And I was responding to that. I think the court may focus simply on the last decision. Unless the court has questions, I see I'm out of time. Thank you. Thank you. We'll give you a minute for rebuttal. The last reasoned decision on the PRP is the Washington Supreme Court's decision in which it said there was an important distinction in under a collateral review because Mr. John Gay had submitted declarations that showed that the courtroom had, in fact, been closed. Excuse me. You're saying that the last reasoned decision was not the decision which is styled ruling denying review April 5th, 2017? Well, the district court looked at two decisions because they were made on two different records. There's the direct appeal decision, which was made purely on the record. And then there is the later decision on Mr. John Gay's PRP because essentially the Washington Supreme Court was saying prove it. So are you saying we should look at both or we should only look at the direct appeal? I think you can look at both. And I think under both, we are arguing that the 2254 D1 and the 2454 D2 standard have been met. With respect to... And how do you reconcile that with Barker? I thought Barker told us that we look at the collateral review decision in Washington and not the direct appeal. I think if the court wants to just look at the collateral review decision, then that decision was an unreasonable application... was contrary to Supreme Court law because it applied a harmless error prejudice standard to a structural error. And as Judge Kleinfeld said, Presley, Waller, Nether, they all say that public trial claims are analyzed under a... are not analyzed under harmless error because it's impossible to say what the error was, what the harm was. And the Supreme Court has said that time and time again. Levine does not apply here because Levine involved the federal contemporaneous objection rule. Washington has a more liberal rule. It does not require the defendant to object at trial in order to bring that claim for the first time on appeal. And that's well settled Washington law. And so that does not apply to this claim because this is not a federal law claim. In terms of the procedural issue. What words do we have exactly in Zhangge's declaration that was considered on collateral review, but not direct review? We have the declaration of his sister, who said that she went to the courtroom early the day of Vardir to try to get in. I think she says I was not let in. She doesn't say no members of the public were let in. No, she does say that. She does say that, Your Honor. Yes, she does. She does. She said that she went there with Evelyn Toole, friends, and his supporters from the Kenyan community. He does have a large community from his church. They went there. But and she saw that the veneer members were brought into the courtroom and then the doors were closed and they were not allowed in. Now, some of the members left. Some of the members of his community left. But she and Evelyn stayed. He also submitted a declaration from himself that said that there was no one else in the courtroom other than the court personnel, a detective, and the attorneys. He also submitted a letter from the Superior Court that said that the maximum seating capacity for Judge Medow's courtroom was 49. And we know that she asked for a larger than normal veneer of 65. I think we've taken you over your time. Thank you, counsel. Thank you both sides for the helpful arguments. The case is submitted and we're adjourned because that was our only case today.
judges: O'scannlain, Kleinfeld, Friedland